UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
H.H., an infant by NANCY HELD, mother and
natural guardian, and NANCY HELD, individually,

                              CASE #: 23-cv-7083 (LLS)

                  Plaintiffs,

        -against-                     CIVIL ACTION

HYATT HOTELS CORPORATION d/b/a GRAND
HYATT BAHA MAR, CTF BM OPERATIONS LTD.  **Hon. Louis L. Stanton, U.S.D.J.**
d/b/a BAHA MAR, and HYATT SERVICES
CARIBBEAN LLC,

                  Defendants.
---------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

---

On the Brief:

Carl E. Zapffe, Esq.
**HELD & HINES LLP**
622 Third Avenue, Suite 600
New York, NY 10017
212-696-4529 (Phone)
718-444-5768 (Fax)
czapffe@heldhines.com
*Attorneys for Plaintiffs*

Brooklyn Office:
2004 Ralph Avenue
Brooklyn, NY 11234
718-531-9700 (Phone)
718-444-5768 (Fax)
www.heldhines.com

## TABLE OF CONTENTS

Section                                                                                                          Page

Table of Authorities.................................................................................................................. ii

Procedural History ...................................................................................................................1

Factual History..........................................................................................................................1

Governing Law .........................................................................................................................3

Legal Arguments .......................................................................................................................6

I.      CTF's Position is Without Merit Because Baha Mar Has an Agreement on
        Its Website with a New York Forum-Selection Clause and a New York
        Choice-of-Law Clause ....................................................................................................6

II.     It is Not Currently Known Whether There Are Any Agents of Defendants
        "Doing Business in," or "Transaction Business in," the State of New York .....................8

III.    It is Not Currently Known Whether There Are Other Factors that Would Lead
        the Court to Conclude that Defendants are "Doing Business in," or
        "Transacting Business in," the State of New York ..........................................................11

IV.     Defendants are Not Entitled to a Dismissal Based on the Doctrine of *Forum
        Non Conveniens* ............................................................................................................12

V.      Alternatively, in Lieu of Dismissing the Amended Complaint, Plaintiffs
        Respectfully Request that the Court Instead Transfer the Matter to a Different
        District Court ..................................................................................................................13

Conclusion ..............................................................................................................................15

# TABLE OF AUTHORITIES

Auth.                                              Cases                                              Page(s)

*Abkco Industries, Inc. v. Lennon*,
    85 Misc. 2d 465 (N.Y. Sup. Ct. 1975), *aff'd in part and modified*
    52 A.D.2d 435 (N.Y. App. Div. 1st Dept. 1976) ...............................................................11

*Amigo Foods Corp. v. Marine Midland Bank-New York*,
    39 N.Y.2d 391 (N.Y. 1976) .................................................................................................4

*Arrow Trading Co. v. Sanyei Corp. (Hong Kong), Ltd.*,
    576 F. Supp. 67 (S.D.N.Y. 1983) .....................................................................................11

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990) ...............................................................................................3

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) ...............................................................................................5

*Bialek v. Racal-Milgo, Inc.*,
    545 F. Supp. 25 (S.D.N.Y. 1982) .......................................................................................5

*Bulova Watch Co. v. K. Hattori & Co.*,
    508 F. Supp. 1322 (E.D.N.Y. 1981) ...............................................................................8, 9

*Burger King Corp. v. Rudzewicz*,
    417 U.S. 462 (1985)..........................................................................................................6, 8

*C.B.C. Wood Prods v. LMD Integrated Logistics Servs.*,
    455 F. Supp. 2d 218 (E.D.N.Y. 2006) ..............................................................................11

*Charles Schwab Corp. v. Bank of America Corp.*,
    883 F.3d 68 (2d Cir. 2018) .................................................................................................9

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ...............................................................................................4

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...........................................................................................................8

*DH Blair & Co., Inc. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) .................................................................................................6

*Dorchester Fin. Securities v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013) .................................................................................................3

*Dunn v. Southern Charters, Inc.*,
    506 F. Supp. 564 (E.D.N.Y. 1981) ...................................................................... 11

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.*,
    32 F. Supp. 2d 118 (S.D.N.Y. 1997) ...................................................................... 7

*Ford Motor Credit Co. v. Colonial Funding Corp.*,
    215 A.D.2d 435 (N.Y. App. Div. 2d Dept. 1995) .................................................. 9

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) .............................................................................................. 13

*Intermor v. Walt Disney Co.*,
    250 F. Supp. 2d 116 (E.D.N.Y. 2003) .................................................................. 14

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ................................................................................................ 5

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65, 71 (2d Cir. 2001) ............................................................................ 13

*Iroquois Gas Corp. v. Collins*,
    42 Misc. 2d 632 (N.Y. Sup. Ct. 1964), *aff'd*,
    23 A.D.2d 823 (N.Y. App. Div. 4th Dept. 1965) ............................................. 4, 5

*Kaye, Scholer, Fierman, Hays & Handler, LLP v. Dreyfuss*,
    266 A.D.2d 51 (N.Y. App. Div. 1st Dept. 1999) ................................................ 11

*Kreutter v McFadden Oil Corp.*,
    71 N.Y.2d 460 (N.Y. 1988) ................................................................................... 9

*Laufer v. Ostrow*,
    55 N.Y.2d 305 (1982) ............................................................................................. 4

*Minnette v. Time Warner*,
    997 F.2d 1023 (2d Cir. 1993) .............................................................................. 14

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) .................................................................................................... 7

*Nat'l Equip. Rental, Ltd. v. Szukhent*,
    375 U.S. 311 (1964) ................................................................................................ 6

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005) ................................................................................ 13

- iii -

*Parke-Bernet Galleries, Inc. v. Franklyn*,
    26 N.Y.2d 13 (N.Y. 1970) .................................................................5

*People v World Interactive Gaming Corp*.,
    185 Misc. 2d 852 (N.Y. Sup. Ct. 1999)..............................................12

*R. Maganlal & Co. v. M.G. Chem. Co.*,
    942 F.2d 164 (2d Cir. 1991) .......................................................12, 13

*Seetransport Wiking Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*,
    989 F.2d 572 (2d Cir. 1993) .............................................................3

*Schutte Bagclosures Inc v Kwik Lok Corp.*,
    48 F. Supp. 3d 675 (S.D.N.Y. 2014) ..................................................9

*Spar, Inc. v. Info. Res., Inc.*,
    956 F.2d 392 (2d Cir. 1992) ...........................................................14

*Sunward Electronics, Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) ..............................................................7

*Taca International Airlines, S.A. v. Rolls-Royce of England, Ltd.*,
    15 N.Y.2d 97 (N.Y. 1965) ...............................................................9

*TradeComet.com LLC v. Google, Inc.*,
    647 F.3d 472 (2d Cir. 2011) .........................................................6, 7

*Uniroyal, Inc. v. Heller*,
    65 F.R.D. 83 (S.D.N.Y. 1974) ..........................................................7

*Vincent v. David-Grabowski, Inc.*,
    628 F. Supp. 430 (S.D.N.Y. 1985), *transfer denied*,
    638 F. Supp. 1171 (S.D.N.Y. 1986) .................................................11

*Welinsky v. Resort of World D.N.V.*,
    839 F.2d 928 (2d Cir. 1988) .....................................................8, 11, 12

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88, 100 (2d Cir. 2000) ......................................................12

*Zibiz Corp. v. FCN Tech. Solutions*,
    777 F. Supp. 2d 408 (E.D.N.Y. 2011) ...............................................5

| Auth. | Misc. | Page(s) |
|---|---|---|

28 U.S.C. § 1404(a) ...........................................................................................................13

28 U.S.C. § 1406(a) ...........................................................................................................14

C.P.L.R. § 301 ...........................................................................................................4, 5, 12

C.P.L.R. § 302 ...........................................................................................................4, 5, 8

C.P.L.R. § 302(a)(1) ...........................................................................................................4, 5, 7, 8, 9

Fed. R. Civ. P. 12(b)(2) ...........................................................................................................3

## PROCEDURAL HISTORY

On August 10, 2023, H.H., an infant (hereinafter the "Infant Plaintiff"), and Nancy Held, individually and as the mother and natural guardian of Infant Plaintiff (collectively "Plaintiffs") filed the initial Complaint.  (Doc. No. 1.)  On January 11, 2024, Plaintiffs filed an Amended Complaint, which added an additional co-defendant.  (Doc. No. 17.)  Currently, the named defendants in this matter are Hyatt Hotels Corporation ("HHC"), CTF BM Operations Ltd. ("CTF"), and Hyatt Services Caribbean, L.L.C. ("Hyatt Services").  (*Id.*)

On March 11, 2024, HHC, CTF, and Hyatt Services (collectively "Defendants") filed a Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(2) (the "Motion to Dismiss"). (Doc. Nos. 20-25).  The filing of both the Amended Complaint and the Motion to Dismiss were timely pursuant to a So-Ordered Stipulation that was agreed-upon by all parties, and entered by the Court on January 3, 2024.  (Doc. No. 16.)  Therefore, Defendants' Motion to Dismiss is now ripe for adjudication.

## FACTUAL HISTORY

Plaintiffs are residents of the State of New York and County of New York.  (Doc. No. 17 at ¶ 2-3.)  In or about March 2023, Plaintiffs began planning a family vacation to Grand Hyatt Baha Mar ("Baha Mar").  Upon information and belief, Baha Mar is a 1,000-acre resort complex on the island of New Providence in the Bahamas.  Baha Mar's amenities include three hotels (Grand Hyatt, SLS, and Rosewood) with a total of approximately 2,200 rooms, a 100,00-square-foot casino, and a 15-acre water park named "Baha Bay."

Plaintiffs ultimately booked a reservation at the Grand Hyatt in Baha Mar from Friday, April 7, 2023, to Tuesday, April 11, 2023.  Plaintiffs made said reservation via Hyatt's interactive website (www.hyatt.com) while located in the State of New York and County of New York.  (Doc. No. 17 at ¶¶ 12-13.

- 1 -

Plaintiffs arrived at the Grand Hyatt on April 7, 2023, as planned, and on April 8, 2023, their first full day at the resort, they were enjoying the Baha Bay water park. At the time of the incident referenced in the Amended Complaint, Infant Plaintiff was riding on a resort-provided innertube in the water park's "lazy river." (Doc No. 17 at ¶ 45.) As the Court is undoubtedly aware, a lazy river is a ride commonly found in most water parks, which typically consists of a slow current that allows guests to relax on rafts, or similar flotation devices, while leisurely meandering through a river-like pool. Lazy rivers are typically patronized by infants, such as Infant Plaintiff, or a water park's more elderly clients, who are unwilling or unable to ride—or who want to take a break from riding—the park's more adventurous water attractions.

Given the foregoing, one would justifiably assume that the sides of all lazy rivers would be comprised of smooth, tile-like material, in order to prevent any sharp objects from injuring the limbs of the half-asleep patrons whose feet are hanging out of innertubes or dangling off of rafts— especially since, despite the slow-moving nature of lazy rivers, younger patrons are still prone to occasionally play "bumper cars" therein with their respective floatation devices. However, in complete contrast to this rather basic and straightforward concept of how a lazy river should be constructed, Baha Bay's lazy river inexplicably had a section wherein the side wall consisted of a jagged, rock-like pattern. (*Id.* at ¶¶ 45-46.) This portion of the lazy river was apparently meant to look like natural rock, but the faux rocks were shockingly sharp and almost razor-like to the touch. (*Id.*)

Even more shocking, though, was the fact that the lazy river contained water jets that would surprisingly and instantaneously accelerate individuals whose floatation devices traversed to a specific location on the lazy river—and that these water jets would accelerate said individuals right into the aforementioned jagged and razor-like faux rocks. (*Id.*) While this was a palpably obvious and hazardous design flaw to any reasonably-minded person, Infant Plaintiff was unaware of its

- 2 -

existence.  Unfortunately for her, Infant Plaintiff's innertube traversed to the exact location mentioned above, whereupon the aforementioned water jets instantly propelled her right into the above-described jagged rocks, causing severe lacerations to Infant Plaintiff's foot.  (*Id.*)

Plaintiffs immediately reported the incident and was treated by the Grand Hyatt medical staff, whereupon she was advised she would have to refrain from being on her feet and/or participating in any activities for several days, thereby ruining the remainder of her family vacation. (*Id.* at ¶ 50.)  Unsurprisingly, the Grand Hyatt medical staff acknowledged to Plaintiffs that they had had to treat many other individuals who had previously suffered similarly-caused injuries. (*Id.* at ¶ 51.)  Accordingly, Defendants had actual notice of this dangerous and hazardous condition, and yet had done nothing to address it.

## GOVERNING LAW

This matter is governed by Rule 12(b)(2), which states that a party may move to dismiss a complaint based on an alleged lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  When opposing a Rule 12(b)(2) motion, the showing a plaintiff must make "varies depending on the procedural posture of the litigation." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).  Where, as here, jurisdictional discovery has not been conducted, a plaintiff need only make a *prima facie* showing by his or her pleadings that jurisdiction is proper, and at this point in the litigation, said *prima facie* showing may be established by mere allegations. *Dorchester Fin. Securities v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (citation omitted). All factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party.  *Seetransport Wiking Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (citation omitted).

A *prime facie* showing of personal jurisdiction involves a two-step analysis. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). First, the Court applies the forum state's long-arm statute. *Id.* "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id.* at 164.

In New York, personal jurisdiction may be obtained over a nonresident defendant either via C.P.L.R. §§ 301 or 302. C.P.L.R. § 301 simply states that "[a] court may exercise jurisdiction over persons, property, or status as might have been exercised heretofore," and pursuant to the caselaw promulgated thereunder, provides for personal jurisdiction against business entities "doing business" in the State of New York. *See*, *e.g.*, *Laufer v. Ostrow*, 55 N.Y.2d 305, 307-08 (1982). The test for whether a business entity is "doing business" in New York has been summarized by the Court of Appeals as follows:

> [I]s the aggregate of the corporation's activities in [New York] such that it may be said to be present in the State not occasionally or casually, but with a fair measure of permanence and continuity[,] and is the quality and nature of the corporation's contacts with the State sufficient to make it reasonable and just according to traditional notices of fair play and substantial justice that it be required to defend the action here.

*Id.* at 310 (internal citations and quotation marks omitted).

By contrast, C.P.L.R. § 302, New York's long-arm statute, states in relevant part that a court may exercise personal jurisdiction over any non-domiciliary "who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1). Enacted in 1962, the purpose of C.P.L.R. § 302 was to extend the basis of jurisdiction over nonresidents beyond the traditional physical presence requirements, *Amigo Foods Corp. v. Marine Midland Bank-New York*, 39 N.Y.2d 391, 393 (N.Y. 1976), and allow New York to take advantage of its constitutional power to subject a wider array of non-residents

to personal jurisdiction. *Iroquois Gas Corp. v. Collins*, 42 Misc. 2d 632, 634 (N.Y. Sup. Ct. 1964), *aff'd*, 23 A.D.2d 823 (N.Y. App. Div. 4th Dept. 1965).

Far fewer contacts are needed to show that a defendant "transacts business" in New York within the meaning C.P.L.R. § 302(a)(1) than are necessary to show that a defendant is "doing business" in New York, as that term has been interpreted in connection with C.P.L.R. § 301. *Bialek v. Racal-Milgo, Inc*., 545 F. Supp. 25, 34 (S.D.N.Y. 1982). Indeed, C.P.L.R. § 302 is a "single act statute," wherein proof of one transaction within the State is sufficient to invoke jurisdiction, even though the defendant never even enters the State of New York. *Zibiz Corp. v. FCN Tech. Solutions*, 777 F. Supp. 2d 408, 420 (E.D.N.Y. 2011). *See also Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17 (N.Y. 1970) ("[i]t is important to emphasize that one need not be physically present in order to be subject to the jurisdiction of our courts under [C.P.L.R. § 302] for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State").

Regarding the second prong of the analysis, the Due Process Clause of United States Constitution, the landmark case of *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), held that a state's power to exercise personal jurisdiction over a defendant is not contingent on said defendant's physical presence within the state's borders, but instead, the Due Process Clause of the Fourteenth Amendment requires only that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. at 316 (citations and internal quotation marks omitted). A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the "quality and nature" of the defendant's contacts with the forum state under a "totality of circumstances" test. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (citations and internal quotation marks omitted). The crucial question in this analysis is whether

the defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," *Burger King Corp. v. Rudzewicz*, 417 U.S. 462, 475 (1985) (citations omitted), such that the defendant "should reasonably anticipate being haled into court there." *Id*. at 474 (citations omitted).  In short, jurisdiction is proper where the contacts proximately result from actions by the defendant itself which create a "substantial connection" with the forum state. *Id*. at 475 (citations omitted).

In the matter at hand, all three Defendants claim the Court has no personal jurisdiction over them.  HHC claims that it is incorporated in Delaware and has its principal place of business in Chicago; that it does not have any operational responsibility or "direct ownership interest" in Baha Mar; and that it has no minimum contacts with the State of New York.  (*See generally* Doc. No. 23.)  CTF admits that it owns and manages Baha Mar, including the Baha Bay water park, but claims that it operates exclusively in the Bahamas; and that it has no minimum contacts with the State of New York.  (*See generally* Doc. No. 24.)  Hyatt Services claims it is incorporated in Delaware and has its principal place of business in Chicago; that it operates portions of Baha Mar, but does not "own, maintain or have control" over the Baha Bay water park; and that it has no minimum contacts with the State of New York.  (*See generally* Doc. No. 21.)  For the reasons set forth below, Plaintiffs respectfully submit that all three Defendants' arguments are fatally defective at this juncture.

## LEGAL ARGUMENTS

## I. CTF'S POSITION IS WITHOUT MERIT BECAUSE BAHA MAR HAS AN AGREEMENT ON ITS WEBSITE WITH A NEW YORK FORUM-SELECTION CLAUSE AND NEW YORK CHOICE-OF-LAW CLAUSE.

It is well settled that parties can consent to personal jurisdiction through forum-selection clauses. *See Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964); *DH Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).  "[F]orum selection clauses are *prima facie*

valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)) (internal quotation marks omitted). An enforceable forum-selection clause amounts to consent to personal jurisdiction. *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997) (collecting examples). Similarly, a choice-of-law clause is likewise a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law. *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004). *See also Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 91 (S.D.N.Y. 1974) (choice-of-law clause constitutes a "significant contact" with the forum under C.P.L.R. § 302(a)(1)).

In the matter at hand, CTF is subject to personal jurisdiction in New York because Baha Mar has a New York forum-selection clause and a New York choice-of-law clause on its website. Specifically, Baha Mar, which CTF admits it owns and manages (*see* Doc. No. 24), has a website, https://bahamar.com, which contains a "legal" link. Clicking the "legal" link brings the user to a page entitled "Resort Terms and Conditions," which specifically states that

> These Terms & Conditions and any dispute arising out of or related to the Terms & Conditions or use of the Site *shall be governed in all respects by and construed and enforced in accordance with the laws of the State of New York, U.S.A.*, without regard to its conflicts of law principles. Exclusive jurisdiction over any cause of action arising out of these Terms & Conditions or your use of the Site *shall be in state or federal courts located in or near New York, NY, U.S.A.* You further agree to submit to the exercise of personal jurisdiction of such courts for the purpose of litigating any such claim or action.

https://bahamar.com/legal/ (last visited Apr. 25, 2024) (emphasis added). To be fair, these same terms and conditions subsequently contain a Bahamas venue clause, and it is thus somewhat unclear and ambiguous which clause would apply to the above-captioned matter. Further, Plaintiffs are currently unaware whether these exact terms and conditions were in place when

Infant Plaintiff sustained her injury. Such is a fact that can only be revealed during the course of discovery. Nevertheless, the existence of the above-quoted passage proves that CTF has, with regards to at least some matters, consented to personal jurisdiction in the State of New York. Accordingly, it has satisfied the "single act" requirement of C.P.L.R. § 302, and it has likewise satisfied the Due Process requirement of the Fourteenth Amendment, since it has "purposely avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," *Burger King Corp.*, *supra*, 417 U.S. at 475. Therefore, pursuant to the above authority, it is clear that personal jurisdiction in New York has been obtained against CTF.

## II.    IT IS NOT CURRENTLY KNOWN WHETHER THERE ARE ANY AGENTS OF DEFENDANTS "DOING BUSINESS IN," OR "TRANSACTING BUSINESS IN," THE STATE OF NEW YORK.

It is well established that a defendant can "purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). Indeed, as set forth above, the New York long-arm statute specifically states that any non-domiciliary "who in person *or through an agent* ... transacts any business within the state or contracts anywhere to supply goods or services in the state" (emphasis added). C.P.L.R. § 302(a)(1).

Indeed, there are a plethora of cases, both at the state and federal level, which hold personal jurisdiction can be obtained not through acts of the defendant itself, but through acts of the defendant's parent company, subsidiary company, related company, sister company, affiliated company, partner company, and/or other type of agent. *See*, *e.g.*, *Welinsky v. Resort of World D.N.V.*, 839 F.2d 928 (2d Cir. 1988) (finding personal jurisdiction where defendant was part owner of a New York organization that marketed defendant's rooms and had the authority to make reservations); *Bulova Watch Co. v. K. Hattori & Co.*, 508 F. Supp. 1322, 1333 (E.D.N.Y. 1981) (it

is settled law that a corporation may be amenable to New York personal jurisdiction when the activities of a subsidiary in this state may fairly be attributed to a parent); *Taca International Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 15 N.Y.2d 97, 102 (N.Y. 1965) (a foreign corporation does business in New York if its affiliated company is in effect a "local department separately incorporated"); *Schutte Bagclosures Inc. v Kwik Lok Corp.*, 48 F. Supp. 3d 675 (S.D.N.Y. 2014) (domestic company served as the agent for a foreign company for purposes of C.P.L.R. § 302(a)(1) where the domestic company, *inter alia*, conducted marketing and promotion on behalf of the foreign company); *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (under C.P.L.R. § 302(a)(1), there is jurisdiction over a principal based on the acts of an agent where the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by the nonresident principal); *Kreutter v McFadden Oil Corp.*, 71 N.Y.2d 460 (N.Y. 1988) (long-arm jurisdiction sustained over a Texas corporation that had no minimum contacts in New York, but that used a second Texas corporation with offices in New York to secure New York investments).

Therefore, it would be premature to dismiss the Complaint at this time because it is not currently known whether any of the three Defendants have parent companies, subsidiary companies, related companies, sister companies, affiliated companies, partner companies, and/or other type of agent "doing business in" or "transacting business in" the State of New York. HHC, for instance, is a multinational hospitality company that manages and franchises approximately 1,350 hotels and all-inclusive properties in 69 countries across six continents. Further, HHC owns, either directly or through subsidiaries or franchisees, numerous hotels located in the County of New York (*e.g.*, Hyatt Centric Times Square, Hyatt Grand Central, Hyatt Place New York/Chelsea, Hyatt Place New York City/Times Square, Hyatt Centric Midtown 5th Avenue, Hyatt Place New York/Midtown South, Hyatt Herald Square, Hyatt Centric Wall Street, Hyatt Union Square, etc.).

According to HHC's most recent annual report ("10-K"), located on the Securities and Exchange Commission website, HHC has approximately fifty (50) subsidiaries.

Similarly, upon information and belief, CTF is a subsidiary of a Hong Kong-based conglomerate named Chow Tai Fook Enterprises Limited ("Chow Tai Fook"), which has holdings in the jewelry, property development, hotel, department store, transportation, energy, telecommunications, port, and casino industries. Information regarding Chow Tai Fook is not as readily available as information regarding HHC, but at one point, Chow Tai Fook was ranked as one of the top fifty (50) largest companies listed on the Stock Exchange of Hong Kong based on market capitalization.

In their Motion to Dismiss, Defendants painstakingly attempt to distance themselves from the State of New York. However, they are all completely silent on whether they have any parent companies, subsidiary companies, related companies, sister companies, affiliated companies, partner companies, and/or other type of agent "doing business in" or "transacting business in" the State of New York. Furthermore, given the size of both HHC and CTF, and the fact that Hyatt Services is a subsidiary of HHC, it seems incredibly likely that all three Defendants actually do have numerous such agents either "doing business in" or "transacting business in" the State of New York. Accordingly, Plaintiffs respectfully submit that it would be incredibly premature to dismiss the Amended Complaint at this juncture, because Plaintiffs are clearly entitled to obtain jurisdictional discovery regarding *all* the potential agents Defendants have in New York through whom personal jurisdiction could be imputed.[1]

---

1.      In similar vein, a search with the New York State Courts Electronic Filing system ("NYSCEF") reveals that either HHC, or various HHC subsidiaries, have litigated dozens upon dozens of lawsuits in the State of New York, in the capacity of both plaintiffs and defendants. Accordingly, it is incredibly disingenuous for HHC and Hyatt Services to now argue that they have absolutely no ties whatsoever to the State of New York, and that New York is an inconvenient forum for them. Plaintiffs respectfully submits that the equitable doctrine of judicial estoppel

III.   **IT IS NOT CURRENTLY KNOWN WHETHER THERE ARE OTHER FACTORS THAT WOULD LEAD THE COURT TO CONCLUDE THAT DEFENDANTS ARE "DOING BUSINESS IN," OR "TRANSACTING BUSINESS IN," THE STATE OF NEW YORK.**

Numerous factors go into whether non-domiciliary businesses are either "doing business in" or "transacting business in" the State of New York.  Generally, courts look to such factors as whether the business has a New York office, New York property, New York bank accounts, New York employees, New York mailing addresses or post office boxes, whether it pays New York income or property taxes, etc.  *See*, *e.g.*, *C.B.C. Wood Prods v. LMD Integrated Logistics Servs*., 455 F. Supp. 2d 218 (E.D.N.Y. 2006).  One such factor, of particular relevance here, is the solicitation of business in New York.  While generally solicitation of business alone is insufficient, *see Arrow Trading Co. v. Sanyei Corp. (Hong Kong), Ltd*., 576 F. Supp. 67 (S.D.N.Y. 1983), once solicitation is found in any substantial degree, very little more is necessary to conclude that a corporation is "doing business in" New York.  *Dunn v. Southern Charters, Inc.*, 506 F. Supp. 564 (E.D.N.Y. 1981).

Other cases have examined more obscure factors that could result in personal jurisdiction. *See*, *e.g.*, *Vincent v. David-Grabowski, Inc.*, 628 F. Supp. 430 (S.D.N.Y. 1985), *transfer denied*, 638 F. Supp. 1171 (S.D.N.Y. 1986) (among other factors, maintaining a listing in the telephone directory); *Abkco Industries, Inc. v. Lennon*, 85 Misc. 2d 465 (N.Y. Sup. Ct. 1975), *aff'd in part and modified* 52 A.D.2d 435 (N.Y. App. Div. 1st Dept. 1976) (drew substantial revenues from the state); *Kaye, Scholer, Fierman, Hays & Handler, LLP v. Dreyfuss*, 266 A.D.2d 51 (N.Y. App. Div. 1st Dept. 1999) (employees took numerous business trips to New York); *Welinsky*, *supra,* 839 F.2d

---

prevents HHC and Hyatt Services from making this argument in the instant action.  *See*, *e.g.*, *Ford Motor Credit Co. v. Colonial Funding Corp.*, 215 A.D.2d 435 (N.Y. App. Div. 2d Dept. 1995) (judicial estoppel precludes a party who assumed a certain position in a prior legal proceeding from assuming a contrary position in another action simply because its interests have changed).

928 (defendant was part owner of a New York corporation); *People v World Interactive Gaming Corp.*, 185 Misc. 2d 852 (N.Y. Sup. Ct. 1999) (website advertising sufficient).

In the matter at hand, while Defendants have submitted affidavits denying various ties to the State of New York, these affidavits are nowhere near comprehensive of all the factors that could potentially provide the Court with personal jurisdiction in this matter. Notably, the affidavits are devoid of denials regarding the solicitation of business in New York—either by Defendants themselves or through third-party agents—nor do they give any details regarding the revenue that is derived from the State of New York as a result of such solicitation.

On top of the foregoing, the affidavits use limiting language in an attempt to obfuscate Defendants' true business dealings with the State of New York. For example, in the HHC affidavit, the affiant states that "HHC's representatives have never traveled to the State of New York to conduct any business transactions related to Plaintiff or her claims" (Doc. No. 23 at ¶ 17), but the affidavit does not deny that HHC representatives have traveled to New York to conduct general business dealings, which would operate as a factor towards the C.P.L.R. § 301 "doing business" test. Accordingly, Plaintiffs respectfully submit that it would be premature to dismiss the Amended Complaint at this juncture, because Plaintiffs are clearly entitled to obtain jurisdictional discovery regarding all the acts Defendants have committed within the State of New York that would allow personal jurisdiction to be obtained in this regard.

## IV. DEFENDANTS ARE NOT ENTITLED TO A DISMISSAL BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS*.

The doctrine of *forum non conveniens* is a discretionary device that permits a court, in certain instances, to dismiss a claim even if the court is a permissible venue with proper jurisdiction. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (citation and internal quotation marks omitted). "The central purpose of a *forum non conveniens* inquiry is to

- 12 -

determine where trial will be most convenient and will serve the ends of justice." *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir. 1991). Courts in the Second Circuit engage in a three-step process to determine whether *forum non conveniens* dismissal is appropriate: First, the court determines the degree of deference to be afforded to the plaintiff's choice of forum; second, the court examines whether an adequate alternative forum exists; third, the court must balance the private and public interests implicated in the choice of forum. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005).

In the matter at hand, all three factors weigh heavily in favor of Plaintiffs. First, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disputed," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), and a plaintiff's home forum is presumed to be convenient. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). Second, an alternate form such as the Northern District of Illinois, the District of Delaware, or a court in the Bahamas is not an adequate alternative since Infant Plaintiff is not an adult, and is thus not able to travel for extended periods of time due to scholastic-related obligations. Finally, the private and public interests weigh in Plaintiffs' favor since evidence can be produced and witnesses can be called to testify just as easily in New York as they could in Chicago or Delaware—and the two primary witnesses in this matter—Infant Plaintiff and Nancy Held—would be able to testify exponentially more easily in New York than anywhere else. Therefore, Defendants should not be entitled to a dismissal on *forum non conveniens* grounds.

## V.    ALTERNATIVELY, IN LIEU OF DISMISSING THE AMENDED COMPLAINT, PLAINTIFFS RESPECTFULLY REQUEST THAT THE COURT INSTEAD TRANSFER THE MATTER TO A DIFFERENT DISTRICT.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." Similarly, pursuant to 28 U.S.C. § 1406(a), [t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer). *See also Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) (the purpose of § 1406(a) is to avoid the injustice of dismissal merely because plaintiffs had made an erroneous guess "with regard to the existence of some elusive fact of the kind upon which venue provisions often turn"); *Intermor v. Walt Disney Co.*, 250 F. Supp. 2d 116, 121 (E.D.N.Y. 2003) (opting to transfer the action to the Middle District of Florida in lieu of dismissal).

In the matter at hand, for the reasons set forth above, Plaintiffs submit that Defendants' motion should be denied in its entirety. However, should the Court disagree, then Plaintiffs alternatively submit that, in lieu of dismissal, this matter should instead be transferred "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). HHC and Hyatt Service both state that they are incorporated in Delaware and headquartered in Chicago, so either the District of Delaware and/or the Northern District of Illinois would suffice in this regard. Additionally, to the extent that Defendants' reply papers and/or oral arguments raise any jurisdictional-related defect that could be corrected with an amended complaint, Plaintiffs respectfully request that, in lieu of dismissal, they be granted leave to file a Second Amended Complaint that could correct any and all such defects.

## CONCLUSION

Therefore, for the aforementioned reasons, as well as those set forth in the attached documents, including and specifically the attached Affirmation of Plaintiffs' counsel, as well as all other papers and documents previously filed in this matter, Plaintiffs respectfully request that the Court (1) deny Defendants' Motion to Dismiss in its entirety, (2) direct Defendants to file a responsive pleading by a date of the Court's choosing; and (3) award Plaintiffs any additional relief that the Court may deem just and proper in light of the procedural and substantive history of this matter.  Plaintiffs thank the Court for its consideration in this regard.

Respectfully Submitted,

**HELD & HINES, LLP**

Dated: New York, New York
April 25, 2024

By: _/s/ Carl E. Zapffe_____
Carl E. Zapffe, Esq.
622 Third Avenue, Suite 600
New York, NY 10017
212-696-4529 (Phone)
czapffe@heldhines.com
*Attorneys for Plaintiffs*

Brooklyn Office:
2004 Ralph Avenue
Brooklyn, NY 11234
718-531-9700 (Phone)
718-444-5768 (Fax)