UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
H.H., an infant by NANCY HELD, mother and
natural guardian, and NANCY HELD, individually,

        CASE #: 23-cv-7083 (LLS)

        Plaintiffs,

    -against-        CIVIL ACTION

HYATT HOTELS CORPORATION d/b/a GRAND
HYATT BAHA MAR, CTF BM OPERATIONS LTD.   **AFFIRMATION IN OPPOSITION**
d/b/a BAHA MAR, and HYATT SERVICES   **TO MOTION TO DISMISS**
CARIBBEAN LLC,

        Defendants.
------------------------------------------------------------X

    I, Carl E. Zapffe, Esq., hereby affirm under penalties of perjury the truth of the following statements:

    1.    I am an attorney with the law firm of Held & Hines LLP, attorneys for Plaintiffs in the above-captioned matter, and I am a duly admitted attorney of the United States District Court for the Southern District of New York. Therefore, I am fully familiar with the facts and circumstances of the matter at hand, and I make this Affirmation in opposition to Defendants' Motion to Dismiss the Amended Complaint.

## PROCEDURAL HISTORY

    2.    On August 10, 2023, H.H., an infant (hereinafter the "Infant Plaintiff"), and Nancy Held, individually and as the mother and natural guardian of Infant Plaintiff (collectively "Plaintiffs") filed the initial Complaint. (Doc. No. 1.)

    3.    On January 11, 2024, Plaintiffs filed an Amended Complaint, which added an additional co-defendant. (Doc. No. 17.) Currently, the named defendants in this matter are Hyatt

Hotels Corporation ("HHC"), CTF BM Operations Ltd. ("CTF"), and Hyatt Services Caribbean, L.L.C. ("Hyatt Services"). (*Id.*)

4. On March 11, 2024, HHC, CTF, and Hyatt Services (collectively "Defendants") filed a Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(2) (the "Motion to Dismiss"). (Doc. Nos. 20-25).

5. The filing of both the Amended Complaint and the Motion to Dismiss were timely pursuant to a So-Ordered Stipulation that was agreed-upon by all parties, and entered by the Court on January 3, 2024. (Doc. No. 16.) Therefore, Defendants' Motion to Dismiss is now ripe for adjudication.

## FACTUAL HISTORY

6. Plaintiffs are residents of the State of New York and County of New York. (Doc. No. 17 at ¶ 2-3.) In or about March 2023, Plaintiffs began planning a family vacation to Grand Hyatt Baha Mar ("Baha Mar").

7. Upon information and belief, Baha Mar is a 1,000-acre resort complex on the island of New Providence in the Bahamas. Baha Mar's amenities include three hotels (Grand Hyatt, SLS, and Rosewood) with a total of approximately 2,200 rooms, a 100,00-square-foot casino, and a 15-acre water park named "Baha Bay."

8. Plaintiffs ultimately booked a reservation at the Grand Hyatt in Baha Mar from Friday, April 7, 2023, to Tuesday, April 11, 2023. Plaintiffs made said reservation via Hyatt's interactive website (www.hyatt.com) while located in the State of New York and County of New York. (Doc. No. 17 at ¶¶ 12-13.

9. Plaintiffs arrived at the Grand Hyatt on April 7, 2023, as planned, and on April 8, 2023, their first full day at the resort, they were enjoying the Baha Bay water park. At the time of

the incident referenced in the Amended Complaint, Infant Plaintiff was riding on a resort-provided innertube in the water park's "lazy river." (Doc No. 17 at ¶ 45.)

10. As the Court is undoubtedly aware, a lazy river is a ride commonly found in most water parks, which typically consists of a slow current that allows guests to relax on rafts, or similar flotation devices, while leisurely meandering through a river-like pool. Lazy rivers are typically patronized by infants, such as Infant Plaintiff, or a water park's more elderly clients, who are unwilling or unable to ride—or who want to take a break from riding—the park's more adventurous water attractions.

11. Given the foregoing, one would justifiably assume that the sides of all lazy rivers would be comprised of smooth, tile-like material, in order to prevent any sharp objects from injuring the limbs of the half-asleep patrons whose feet are hanging out of innertubes or dangling off of rafts—especially since, despite the slow-moving nature of lazy rivers, younger patrons are still prone to occasionally play "bumper cars" therein with their respective floatation devices.

12. However, in complete contrast to this rather basic and straightforward concept of how a lazy river should be constructed, Baha Bay's lazy river inexplicably had a section wherein the side wall consisted of a jagged, rock-like pattern. (Doc No. 17 at ¶¶ 45-46.) This portion of the lazy river was apparently meant to look like natural rock, but the faux rocks were shockingly sharp and almost razor-like to the touch. (Id.)

13. Even more shocking, though, was the fact that the lazy river contained water jets that would surprisingly and instantaneously accelerate individuals whose floatation devices traversed to a specific location on the lazy river—and that these water jets would accelerate said individuals right into the aforementioned jagged and razor-like faux rocks. (Id.)

14. While this was a palpably obvious and hazardous design flaw to any reasonably-minded person, Infant Plaintiff was unaware of its existence. Unfortunately for her, Infant Plaintiff's innertube traversed to the exact location mentioned above, whereupon the aforementioned water jets instantly propelled her right into the above-described jagged rocks, causing severe lacerations to Infant Plaintiff's foot. (Id.)

15. Plaintiffs immediately reported the incident and was treated by the Grand Hyatt medical staff, whereupon she was advised she would have to refrain from being on her feet and/or participating in any activities for several days, thereby ruining the remainder of her family vacation. (Id. at ¶ 50.)

16. Unsurprisingly, the Grand Hyatt medical staff acknowledged to Plaintiffs that they had had to treat many other individuals who had previously suffered similarly-caused injuries. (Id. at ¶ 51.) Accordingly, Defendants had actual notice of this dangerous and hazardous condition, and yet had done nothing to address it.

## ARGUMENT

17. Plaintiffs' arguments are set forth in the enclosed Memorandum of Law. Generally, though, Plaintiff respectfully submits that the Court should deny Defendants' motion because, *inter alia*, (a) Baha Mar has a New York forum-selection clause on its website, (b) it is not currently known whether there are any agents of Defendants "doing business in," or "transacting business in," the State of New York, and (c) it is not currently known whether there are any other factors that would lead the Court to conclude that Defendants are "doing business in," or "transacting business in," the State of New York.

18. Additionally, Plaintiffs note that Baha Mar has a New York forum-selection clause and a New York choice-of-law clause on its website. Specifically, Baha Mar, which CTF admits

it owns and manages (see Doc. No. 24), has a website, https://bahamar.com, which contains a "legal" link. I personally clicked on the "legal" link, and it brought me to a page entitled "Resort Terms and Conditions," which specifically states that

> These Terms & Conditions and any dispute arising out of or related to the Terms & Conditions or use of the Site *shall be governed in all respects by and construed and enforced in accordance with the laws of the State of New York, U.S.A.*, without regard to its conflicts of law principles. Exclusive jurisdiction over any cause of action arising out of these Terms & Conditions or your use of the Site *shall be in state or federal courts located in or near New York, NY, U.S.A.* You further agree to submit to the exercise of personal jurisdiction of such courts for the purpose of litigating any such claim or action.

https://bahamar.com/legal/ (last visited Apr. 25, 2024) (emphasis added).

19. My research indicates that HHC is a multinational hospitality company that manages and franchises approximately 1,350 hotels and all-inclusive properties in 69 countries across six continents.

20. It is my further understanding that HHC owns, either directly or through subsidiaries or franchisees, numerous hotels located in the County of New York (e.g., Hyatt Centric Times Square, Hyatt Grand Central, Hyatt Place New York/Chelsea, Hyatt Place New York City/Times Square, Hyatt Centric Midtown 5th Avenue, Hyatt Place New York/Midtown South, Hyatt Herald Square, Hyatt Centric Wall Street, Hyatt Union Square, etc.).

21. I have reviewed HHC's most recent annual report ("10-K") on the Securities and Exchange Commission website, and Exhibit 21.1 of this document, entitled "List of Subsidiaries," reveals that HHC has approximately fifty (50) subsidiaries. The direct link to the 10-K itself is: https://www.sec.gov/ix?doc=/Archives/edgar/data/0001468174/000146817424000014/h-20231231.htm (last visited on April 25, 2024).

- 6 -

22. I have also conducted research regarding CTF, and upon information and belief, CTF is a subsidiary of a Hong Kong-based conglomerate named Chow Tai Fook Enterprises Limited ("Chow Tai Fook"), which has holdings in the jewelry, property development, hotel, department store, transportation, energy, telecommunications, port, and casino industries. Information regarding Chow Tai Fook is not as readily available as information regarding HHC, but at one point, Chow Tai Fook was ranked as one of the top fifty largest companies listed on the Stock Exchange of Hong Kong based on market capitalization.

23. I also conducted a search with the New York State Courts Electronic Filing system ("NYSCEF"), and this search revealed that either HHC, or various HHC subsidiaries, have litigated dozens upon dozens of lawsuits in the State of New York, in the capacity of both plaintiffs and defendants.

**WHEREFORE**, for the aforementioned reasons, as well as those set forth in the attached documents, including and specifically the attached Memorandum of Law, as well as all other papers and documents previously filed in this matter, Plaintiffs respectfully request that the Court (1) deny Defendants' Motion to Dismiss in its entirety, (2) direct Defendants to file a responsive pleading by a date of the Court's choosing; and (3) award Plaintiffs any additional relief that the Court may deem just and proper in light of the procedural and substantive history of this matter. Plaintiffs thank the Court for its consideration in this regard.

                                                    **HELD & HINES, LLP**

Dated: New York, New York                 By: _/s/ Carl E. Zapffe_
      April 25, 2024                                       Carl E. Zapffe, Esq.
                                                             622 Third Avenue, Suite 600
                                                             New York, NY 10017
                                                             212-696-4529 (Phone)
                                                            czapffe@heldhines.com
                                                            *Attorneys for Plaintiffs*